306 F.2d 892
 Isadore BLUMENFIELD, Appellant,
v.
UNITED STATES of America, Appellee.
Edward BERMAN, Appellant,
v.
UNITED STATES of America, Appellee.
Abe BROWNSTEIN, Appellant,
v.
UNITED STATES of America, Appellee.
Harry BLOOM, Appellant,
v.
UNITED STATES of America, Appellee.
Yiddy BLOOM, Appellant,
v.
UNITED STATES of America, Appellee.
 Nos. 16830-16834.
 United States Court of Appeals Eighth Circuit.
 August 1, 1962.
 Rehearing Denied September 6, 1962.
 
 Ray M. Foreman, Danville, Ill., for appellant; E. David Rosen, Miami, Fla., with him on the brief.
 Hyam Segell, Sp. Asst. to the Atty. Gen., St. Paul, Minn., for appellee; Miles W. Lord, U. S. Atty., Minneapolis, Minn., and counsel, William S. Fallon, Kelley, Segell & Fallon, St. Paul, Minn., with him on the brief.
 Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and HENLEY, District Judge.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 This is an appeal by the defendants, Isadore Blumenfield, Edward Berman, Abe Brownstein, Harry Bloom and Yiddy Bloom, hereinafter jointly called appellants, from the final judgment and sentence imposed upon their conviction by a jury upon counts 1, 3, 13 and 15 of an indictment charging them with the ofense of willfully and knowingly aiding, assisting, counselling, procuring and advising Ruth Cook and Ann Albrecht to prepare and present to the District Director of Internal Revenue, for the District of Minnesota, a special tax return on U. S. Treasury Department Form 11, under the penalties of perjury, containing the false and fraudulent representation that Ruth Cook was the owner and the sole owner of Addison's Bar and that Ann Albrecht was the owner and sole owner of the Kenesaw Bar and Cafe for the fiscal years beginning July 1, 1957 and July 1, 1958, all in violation of § 7206(2), Title 26 U.S.C.A.[1]
 
 
 2
 The indictment contains 32 counts charging substantive offenses and one conspiracy count. The indictment grew out of the filing of special tax returns on Forms 11 relative to the liquor stamp tax imposed by § 5121(a) (1) with the District Director of Internal Revenue by persons purporting to be the owners of 7 liquor establishments in Minneapolis during the period from 1955 to 1959. The indictment alleges that all such applications contained false statements as to the ownership, knowingly and willfully made. The parties making the statements are charged with violation of § 7206(1), and the 5 appellants are, in separate counts, charged with aiding and abetting the making of the false returns in violation of § 7206(2).
 
 
 3
 Ann Albrecht was convicted of making a false return for the year 1958 as charged in count 2 and for the year 1957 as charged in count 14. Ruth Cook was convicted of making a false return for the year 1958 as charged in count 4 and for the year 1957 as charged in count 16. Neither Ann Albrecht nor Ruth Cook has appealed from her conviction.[2]
 
 
 4
 The conviction of appellants on count 1 is based on the return filed by Ann Albrecht involved in count 2. Their conviction on count 13 is based on the Albrecht return involved in count 14. Appellants' conviction on count 3 is based upon the return filed by Ruth Cook involved in count 4, and the conviction on count 15 is based upon the return filed by Ruth Cook involved in count 16.
 
 
 5
 Not guilty verdicts were returned upon all other counts of the indictment.
 
 
 6
 Each of the appellants was given a general sentence of 3 years imprisonment and a committed fine of $10,000 on counts 1 and 13, and on counts 3 and 15 each was fined $10,000 and given a 3 year suspended sentence with 5 years probation to commence upon the completion of the sentence imposed on counts 1 and 13.
 
 
 7
 Appellants are all represented by the same counsel and raise the same points upon this appeal. The evidence relating to the various appellants differs in no material respect. Appellants attack the validity of their conviction upon the following basic grounds:
 
 
 8
 I. Error in denial of motion to dismiss the indictment.
 
 
 9
 II. Error in denial of motion for acquittal.
 
 
 10
 III. Prejudicial error in instructions and in rulings upon evidence.
 
 
 11
 The asserted errors will be discussed in the order stated.
 
 
 12
 I. Sufficiency of the indictment.
 
 
 13
 Count I of the indictment is typical of the counts upon which the appellants were convicted. It reads:
 
 
 14
 "That on or about the 9th day of June, 1958, at the City of Minneapolis, County of Hennepin, State and District of Minnesota,
 
 
 15
 ISADORE BLUMENFIELD,
 HARRY BLOOM,
 YIDDY BLOOM,
 ABE BROWNSTEIN, and
 EDWARD BERMAN
 
 
 16
 did wilfully and knowingly aid and assist in, and counsel, procure, and advise the preparation and presentation to the District Director of Internal Revenue for the Internal Revenue District of Minnesota, at St. Paul, Minnesota, of a false and fraudulent special tax return on United States Treasury Department Form 11, in which said special tax return it was represented that Ann Albrecht was the owner and the sole owner of the Kenesaw Bar and Cafe, whereas, as the said defendants then and there well knew, said Ann Albrecht was not the owner and sole owner of the Kenesaw Bar and Cafe.
 
 
 17
 "In violation of Section 7206(2), Title 26 United States Code."
 
 Section 7206(2) provides:
 
 18
 "Any person who —
 
 
 19
 * * * * * *
 
 
 20
 "(2) * * * Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person auorized or required to present such return, affidavit, claim, or document; * * *" shall be punished.
 
 
 21
 Appellants filed a motion to dismiss the indictment upon the following among other grounds:
 
 
 22
 (1) The indictment does not state the nature and cause of the offense in that the allegations are so vague, indefinite and ambiguous that the Defendants are unable to plead thereto, prepare for trial thereon and avail themselves of a plea of former jeopardy if acquitted or convicted thereon.
 
 
 23
 (2) That the Regulations and the special tax return form promulgated by the Secretary and his delegate are contrary to the United States Code.
 
 
 24
 Such motion was denied.
 
 
 25
 The attack on the indictment here is limited to the two grounds just quoted. We find no merit in ground (2). Section 6001 requires a person liable for a tax imposed to make such returns and comply with such rules and regulations as the Secretary may prescribe. Section 6061 requires returns to be signed in accordance with the forms or regulations prescribed by the Secretary.
 
 
 26
 It is clear that a stamp tax in the amount of $50 was due from each of the various retail liquor establishments here involved. We believe that the Commissioner was authorized to prescribe reasonable forms and regulations to facilitate the collection of the liquor stamp tax. We cannot say that the Commissioner, in prescribing the forms and regulations, exceeded his statutory authority.
 
 
 27
 A more difficult problem is presented by appellants' contention that the indictment is void because it is too vague, indefinite and ambiguous. The standards for determining the sufficiency of an indictment have been liberalized in recent years. The test to be applied in determining the sufficiency of an indictment now appears to be well-established. In Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861, the Supreme Court states:
 
 
 28
 "The rigor of old common law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, `and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"
 
 
 29
 To like effect, see Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041; Hayes v. United States, 8 Cir., 296 F.2d 657, 667; Harris v. United States, 8 Cir., 288 F.2d 790, 793; Anderson v. United States, 8 Cir., 262 F.2d 764, 770; Hewitt v. United States, 8 Cir., 110 F.2d 1, 5.
 
 
 30
 Count I has heretofore been set out and as stated is typical of the other counts under which the appellants were convicted. Judged by the legal tests and standards just stated, we do not believe the indictment is vulnerable to the attack made upon it. The indictment sets forth the essential elements of the offense and is without doubt sufficiently definite to protect the appellants' rights to assert former jeopardy in any subsequent proceeding.
 
 
 31
 The words, charging that the false representation was that Ann Albrecht was "the owner and sole owner" and that she in fact was not "the owner and sole owner", are somewhat indefinite, in that the words "owner and sole owner" are used in the conjunctive form and that said word "owner" and the words "sole owner" may have different meanings. Neither of said words are defined in the statute or regulations. As stated by the trial court in its instructions, the word "owner" has no exact meaning. Moreover, the Government does not point out the specific portion of the return which they claim constitutes the false statement.
 
 
 32
 It would seem that if more specific information was needed as to the nature of the charge, this should have been obtained by a bill of particulars. Appellants did request a bill of particulars, including a request that the Government define and give the meaning of the non-statutory language "owner and sole owner". Such relief was denied. Appellants here predicate no error upon the court's failure to require such information.
 
 
 33
 While the indictment does not set out the false statement the Government relies upon as specifically as it might, we are inclined to believe that appellants were sufficiently apprised of the nature of the charge they were required to meet. The Government in its brief states:
 
 
 34
 "The basis for each of the charges and convictions herein is the statement made by the licensee on the face of the Treasury Form 11 following her signature and inserted by her that her title was that of `owner.'
 
 
 35
 * * * * * *
 
 
 36
 "The four Forms 11 which served as the basis for the convictions in the Court below do not on their face require any information concerning ownership; they merely provide a space for a signature and the title of the person signing. The false statements on those four forms were made by Ann Albrecht and Ruth Cook when they volunteered in their own handwriting the false information that they were the owners of the Kenesaw Bar and Addison's Bar respectively."
 
 
 37
 While the Government's position on this appeal as just stated was not clearly made apparent in the trial court, we believe it fair to say that appellants were sufficiently apprised of the Government's contention that the false representation consisted of placing the word "owner" following the signature upon Form 11 returns. While the issue of the sufficiency of the indictment presents a rather close question, we are inclined to hold that the court committed no error in denying defendants' motion to dismiss, but we feel that the scope of the false statement should be limited to the position taken by the Government in its brief, as above set out.
 
 
 38
 II. Motion for Acquittal.
 
 
 39
 Appellants, at the close of the Government's case and again at the close of all of the evidence, made a motion for acquittal in substance urging the Government had failed to prove the essential elements of the offense charged.
 
 
 40
 The essential elements of the offense here charged, each of which must be proved to convict these appellants, are:
 
 
 41
 (1) that Ruth Cook and Ann Albrecht stated that they were the owners of the bars involved; (2) that they were not in fact the owners of the bars;
 
 
 42
 (3) that the representation related to a material matter;
 
 
 43
 (4) that appellants aided, assisted, counselled, procured, and advised Ruth Cook and Ann Albrecht in the preparation and presentation of the Forms 11 involved;
 
 
 44
 (5) that the appellants knew Ann Albrecht and Ruth Cook were not the owners of the bars involved; and
 
 
 45
 (6) that the appellants acted willfully, i. e., with an evil intent.
 
 
 46
 The appellants have made a broad attack on the sufficiency of the evidence to sustain their convictions. The statement of points is as follows:
 
 
 47
 "(1) There was no evidence that appellants aided, assisted, counselled, procured and advised Ruth Cook or Ann Albrecht to prepare and file false and fraudulent returns.
 
 
 48
 "(2) The returns, as filed, were not false and fraudulent as to a material matter."
 
 
 49
 Point (1) can be rapidly disposed of. We are satisfied in the event the ownership statements made in the pertinent Forms 11 are false that there is substantial evidence to establish that appellants aided, counselled, procured and advised the filing of such statements.
 
 
 50
 Point (2) raises a rather close and difficult problem. It is perfectly clear that a false statement is an essential element of the offense here charged. The charge here is of the perjury type. A person cannot be convicted of perjury if his answers are legally truthful. United States v. Slutzky, 3 Cir., 79 F.2d 504, 505; Hart v. United States, 9 Cir., 131 F.2d 59, 61; Smith v. United States, 6 Cir., 169 F.2d 118, 121. In the latter case the rule is stated:
 
 
 51
 "Appellant is right in his contention that there can be no lawful conviction in a perjury case when an answer of the defendant, under oath, to a question propounded to him is `literally accurate, technically responsive, or legally truthful.'"
 
 
 52
 See also Segal v. United States, 8 Cir., 246 F.2d 814, 816.
 
 
 53
 It is obvious that if no false statement was made on the Forms 11, appellants could not possibly be guilty of aiding and abetting the presentation and filing of false returns. In determining the sufficiency of the evidence to support the conviction, the evidence must be viewed in the light most favorable to the Government.
 
 
 54
 In a prosecution for perjury the government is required to prove each element by substantial evidence excluding every other hypothesis than that of guilt. Brown v. United States, 8 Cir., 245 F.2d 549, 556; Beckanstin v. United States, 5 Cir., 232 F.2d 1, 4; United States v. Rose, 3 Cir., 215 F.2d 617; Fotie v. United States, 8 Cir., 137 F.2d 831, 840; Danaher v. United States, 8 Cir., 39 F.2d 325, 332. As stated in Brown v. United States, supra:
 
 
 55
 "To sustain a conviction of perjury it must be shown by clear, convincing and direct evidence to a moral certainty and beyond a reasonable doubt that the defendant committed wilful and corrupt perjury, and the burden is on the government to prove the essential elements of the crime by substantial evidence excluding every other hypothesis than that of defendant's guilt. Probable or credible evidence is not enough. * * *"
 
 The Government in its brief states:
 
 56
 "The basis for each of the charges and convictions herein is the statement made by the licensee on the face of the Treasury Form 11 following her signature and inserted by her that her title was that of `owner.'"
 
 
 57
 It is undisputed that Ruth Cook and Ann Albrecht executed the pertinent Forms 11 by placing their signatures on the lines marked "signature" and by writing in the word "owner" on the line immediately following, marked "title". While the indictment as shown in Division I also charges a false statement of sole ownership, we do not understand that the Government makes the claim that either licensee specifically represented on Forms 11 any sole ownership. Moreover, there is no proof of any representation of sole ownership unless the words "owner" and "sole owner" can be said to have the same meaning. Thus, the statement to be tested for truth or falsity is the statement to the effect "my title is owner".
 
 
 58
 Appellants have conceded that they have at all times had a substantial financial interest in each of the bar operations here involved. The appellants or some of them had been engaged in the liquor business during the prohibition era and had found such business to be profitable. Upon the repeal of the prohibition amendment, they desired to invest their funds in certain liquor stores in Minneapolis. Minnesota laws and Minneapolis ordinances presented some obstacles which prevented them from engaging in such business in their own names. Such obstacles were in the form of provisions that one person was not permitted to have an interest in more than one bar at the same time, and that persons who had been convicted of a felony were not eligible for licenses. To circumvent these state laws and city ordinances, the appellants, except Yiddy Bloom, who came into the syndicate later, utilized corporations as the entity to whom necessary licenses were issued. Disclosure of corporate ownership was required, and hence the stock was issued in the names of outsiders, the appellants retaining possession of the stock. Later, because income tax complications arose, the stock was issued in the name of the store operator and held by such operator, the beneficial interest in such stock in all probability remaining in appellants. Prior to 1944 and subsequent thereto, the Internal Revenue Service made numerous investigations of the tax liability of the appellants arising out of the store operations.
 
 
 59
 Ann Albrecht's Exhibit No. 1016, a memorandum dated January 22, 1944, by Rodney Hanson, Internal Revenue Agent, and Arthur A. Stone, acting special agent in charge, shows that Harry Bloom, upon assurance given that the information would be used for tax purposes only, frankly disclosed the method of operation of the liquor stores and expressed a desire that some setup be devised so that the liquor business could be conducted in a legitimate manner. Appellants' counsel (Mr. Robert Levitt) and accountant participated in this conference. The report states, in part:
 
 
 60
 "To this end then, Mr. Levitt insisted that each of the individuals above-named give or abandon any claim to any interest they might have in stocks of the various corporations, but that the four individuals continue to manage and direct the various businesses and to finance such businesses with their capital in the form of loans, buying connections, etc., they to receive reasonable individual salaries for services rendered and to receive the extra profits after providing a reasonable return on capital stock to the corporation, in the guise of rentals on business properties occupied by the various businesses, same being in effect, however, both rents and profit on use of capital, no interest being charged the corporations.
 
 
 61
 * * * * * *
 
 
 62
 "This plan of operations was explained to Special Agent Stone and to Rodney Hanson, Internal Revenue Agent, and their approval sought. They stated that while they could see nothing wrong with the set-up, yet they were in no position to pass upon a case which would perhaps be assigned to some other agents for subsequent years and suggested that same be submitted to Group Chief Barber for his criticism or approval.
 
 
 63
 "Accordingly, an informal discussion was had between Mr. C. H. Barber, Rodney Hanson, Robert Levitt and Harry Bloom wherein the set-up was discussed pro and con, and representative of taxpayer was given reasonable assurances that the plan would stand up if followed in actual operations.
 
 
 64
 * * * * * *
 
 
 65
 "In any event, the upshot of the plan is that the four partners are in fact conducting a liquor sales business under the guise of a real estate business, which appears to be the only way they can operate in as near a legitimate manner because of harshness of local state law which denies a license to conduct a legitimate business to any person who has been previously convicted on a felony count.
 
 
 66
 "To so operate, then, the partners are in effect forced to pay out a profit to a corporation which is in effect merely a trustee of a license held to permit the partnership to do business.
 
 
 67
 "In view, then, of the fact that stockholdings of the corporations have been divorced from actual ownership of the partners, it appears that there can be no charge made that rental is used to siphon out corporate profits."
 
 
 68
 This appeal is here upon the original record consisting of 956 pages of proceedings, plus 17 volumes of testimony, and what has been aptly described as a room full of exhibits. While counsel have in their briefs set out some record citations, many of their statements and contentions are not supported by record citations. This has made it extremely difficult for us to locate the pertinent evidence. It is impossible within the proper limits of this opinion to make any attempt to summarize the great mass of evidence before us in the form of testimony and exhibits. We have, however, endeavored to examine all portions of the record relevant to the issues presented.
 
 
 69
 In order to determine whether the representation of ownership made by the bar licensees is false, it is necessary to ascertain the meaning of the word "ownership". 73 C.J.S. Property § 13(c), p. 187 states:
 
 
 70
 "As applied to personal property the term `owner' has a variety of meanings, and includes persons whose interests range from exclusive or absolute ownership to equitable ownership or a mere right of possession."
 
 
 71
 and at pp. 190-191:
 
 
 72
 "The word `ownership' varies in its significance according to the context and the subject matter with which it is used. * * * However, ownership does not always mean absolute ownership, but covers different estates in property. Ownership may be absolute or conditional, or, stated otherwise, it may be absolute or it may be limited and qualified; or it may be qualified or unqualified. Too, ownership may be complete or incomplete, special, general and special, reputed, legal or equitable, legal and nominal, or equitable and beneficial, perfect or imperfect, and there may be quasi ownership.
 
 
 73
 "There may be two distinct properties held by several persons in the same thing, or the ownership or legal title may be in one person and the right of possession in another."
 
 
 74
 For other statements and supporting authorities showing the meaning of the word "owner" to be varied and flexible and to depend in a great measure on the manner of its use, see 43 Am.Jur., Property, § 37; Annot. 2 A.L.R. 778, 95 A.L.R. 1085.
 
 
 75
 The word "own" as used in statutes has been given the widest variety of construction, usually guided in some measure by the objects sought to be accomplished in the particular instance. Peterson v. Johnson, 132 Wis. 280, 111 N.W. 659; Merrill Ry. etc., v. Merrill, 119 Wis. 249, 96 N.W. 686.
 
 
 76
 The word "owner" as used in various statutes is one of flexible meaning, depending on language and purpose of the particular statute in which employed, and it varies from an absolute proprietary interest to a mere possessory right. Animal Rescue League v. Bourne's Assessors, 310 Mass. 330, 37 N.E.2d 1019, 138 A.L.R. 110.
 
 
 77
 Our examination of the authorities just cited persuades us that the word "owner" has no precise or definite meaning and that the word must be examined in its context and setting to determine the meaning intended. Moreover, it would appear that a representation that "my title is owner" would be something less strong than a statement that a person is in fact an owner. Title is defined as a descriptive name, an appellation or designation. Webster's New International Dictionary.
 
 
 78
 It is apparent that appellants and all concerned intended the operators of the respective bars to have the title of owner.
 
 
 79
 Since as we have found the word "owner" has a flexible meaning which is in large measure dependent upon its setting and use, we look to the background provided by the statutes and regulations, pursuant to which Forms 11 were filed. It is undisputed that the establishments operated by Ann Albrecht and Ruth Cook are retail liquor stores. Section 5121(a) (1) imposes a $50 annual stamp tax upon each retail liquor store. Section 7011 requires every one engaged in such business to register. There is no specific provision in either statute that the required action be taken by the owner. Section 194.106 (Title 26, 1954) Code of Federal Regulations, provides:
 
 
 80
 "The return of an individual proprietor shall be signed by the proprietor; the return of a partnership shall be signed by a member of the firm; and the return of a corporation shall be signed by an officer thereof. In each case, the person signing the return shall designate his capacity as `individual owner', `member of firm', or, in the case of a corporation, the title of the officer."
 
 
 81
 The word "owner" is not mentioned in the statutes. "Owner" is not defined in either the statutes or the regulations. No cases have been cited or discovered covering the issue of who should file and sign the returns or the proper meaning of the word "owner" in the situation such as that confronting us.
 
 
 82
 The regulation above set out requires the person signing the return to designate his capacity to be in one of three categories: (1) individual owner; (2) member of the firm; (3) by title of office in case of corporate ownership. The corporate organizations previously operating some of the stores had been dissolved before the date of the returns here in question. The licensees at the time they filed the returns were not members of any of the partnerships existing between the appellants. Thus if licensees were qualified to sign the return in any respect, such signing would be in the capacity of owner.
 
 
 83
 The statutes are in the revenue section of the Code. The primary purpose of the revenue statutes is to obtain revenue. See and compare Wisniewski v. United States, 8 Cir., 247 F.2d 292, 298.
 
 
 84
 The number of owners of a single retail establishment at a specified address has no effect upon the amount of tax due. See § 5143(a).
 
 
 85
 Donald Hasselberg, a Government witness who had served as an inspector for the alcohol unit, testified that the words "licensee", "owner" and "proprietor" were used interchangeably and by owner he means the person who held the federal stamp and the city license. Inspector McNitt, who made some of the inspections on the bars here involved, testified inspections usually consisted of comparing ownership as stated in the license with the stamp to be sure there was no change of ownership since the stamp was issued. He stated that he had heard rumors that ownership was in others than those named in the stamps and licenses, which rumors had persisted since 1941, but that he never wrote down any violations by reason thereof. He says this is because he never had evidence to prove the licensees were not owners. However, it is apparent that this information should have been sufficient to put him on inquiry, which in all probability would have led him to the complete information on ownership in the files of the Income Tax Division of the Internal Revenue Department. There is reason to believe that he did not pursue these rumors because he deemed them of no significance taxwise.
 
 
 86
 Retail dealers do not have to secure permits. There appears to be no discretion involved in issuing stamps to retail dealers. All that is involved is signing and filing the Forms 11 and paying the stamp tax.
 
 
 87
 Under the circumstances heretofore related, we see no occasion to give the word "owner" as used in the Forms 11 here in controversy any narrow or restricted meaning, such as complete or absolute ownership. We believe that the falsity of the ownership statement should be tested by the broad and flexible definitions of ownership that generally prevail. Such interpretation is in accord with the principle of strict interpretation of statutes against the Government which generally prevails in criminal cases. See Wisniewski v. United States, supra; United States v. Resnick, 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127.
 
 
 88
 This brings us to the point of determining whether upon this record the Government has produced substantial evidence to support a finding that the statements of Ann Albrecht and Ruth Cook that they are owners are false. It is established beyond dispute that Ann Albrecht and Ruth Cook applied for and obtained retail liquor licenses for the establishments they operated from the City of Minneapolis, and that they were at least holders of legal title to such licenses. No other licenses were in effect at the addresses where they operated. The possession of licenses was a prerequisite to the lawful operation of the businesses. The evidence is overwhelming to the effect that it was the intention of the appellants, as well as that of the operators, that the licenses be obtained in the name of the operators and that the respective liquor businesses be run in their names. This alone would go a long way toward negating any falsity in the statement of ownership.
 
 
 89
 There is considerable additional evidence supporting ownership in the licensees. The licensees were in possession of their respective premises. They paid the ordinary rental for the use of their premises and an additional charge in the form of rent to the appellants, which appears to be a means of transferring to the appellants their interest in the profits of the business. Books of the establishments which were kept by the appellants' accountants showed the licensees as owners of the businesses. It is undisputed that in 1957 Ann Albrecht received profits from the business in the amount of $1564 and that her profits in 1958 amounted to $1781; and that Ruth Cook's profits for 1957 were $1359 and for 1958, $1732. The Government, in its brief, concedes such profits were received but contends that cannot be any evidence of ownership as they amounted to only 3% to 5% of the net profits. We cannot escape the conclusion that the receipt of profits constitutes evidence of some degree of ownership. The evidence also discloses that Ann Albrecht relinquished her interest in the bar on December 31, 1959, and that at that time her books reflected a net worth of $52,370 with an indebtedness to the appellants of $44,081. Her interest was purchased by the wife of Yiddy Bloom at its book value, being the net difference between the above figures in the amount of $8,289.
 
 
 90
 The licensees were billed for the merchandise furnished their establishments and paid the bills and operating expenses. They filed income tax returns including therein the liquor operations.
 
 
 91
 What is here described as Addison's Bar, operated by Ruth Cook, was prior to 1955 operated by Ramona Bar and Cafe, Inc. All shares of that corporation were held by and in the name of Ruth Cook. Upon liquidation of the corporation, the assets of the corporation were distributed to Ruth Cook, its sole stockholder, pursuant to resolution of liquidation.
 
 
 92
 We are inclined to believe that under the evidence legal ownership of the stores as well as the licenses rested in Ann Albrecht and Ruth Cook, with substantial equitable or beneficial interests in the appellants. Such it appears was the view of the revenue agents as set out in the excerpt from the Ann Albrecht exhibit hereinabove. In any event, regardless of what the precise nature of the interest of the operators might have been, we are satisfied that the evidence before us compels a conclusion that Ruth Cook and Ann Albrecht at least had partial ownership in the establishments which they operated, and the existence of such partial ownership compels a determination that the statements made in the Forms 11 are not false.
 
 
 93
 Our decision is limited to the specific issues before us. There is no doubt that appellants had a substantial financial interest in the liquor stores here involved and that they had a large voice in the management of such concerns. This, however, does not negate a partial ownership of the liquor stores in the licensees.
 
 
 94
 Unlike the Minneapolis license application form, Form 11 does not contain specific questions eliciting detailed information as to the nature and extent of ownership. The issue of whether appellants made false statements in their Minneapolis license applications is not before us. We are not here concerned with the income tax consequences of appellants' method of operation. It is quite true that the appellants have handled their interests in the liquor stores in a complicated and confusing manner and that the books and records of such stores depart from usual and normal accounting procedures. There is much in the record to indicate that appellants may not have led an exemplary life and we in no way approve the method in which the appellants operated. We are here compelled to determine this case upon the issues properly before us.
 
 
 95
 Upon the basis of our determination that the Government has not produced substantial evidence to establish that the representations made by Ann Albrecht and Ruth Cook on the Forms 11 that their title is owner is false, we are compelled to conclude that the trial court committed error in overruling appellants' motion for acquittal on the charges involved in this appeal.
 
 
 96
 III. Prejudicial error in instructions and in rulings upon evidence.
 
 
 97
 Appellants have in their last seven points urged that the trial court has committed prejudicial errors in its instructions, its rulings upon the admission of evidence, and in other respects. Some of such points raise very substantial questions but because of our determination in Division II that a reversal is required, no purpose will be served by a consideration of such asserted errors.
 
 
 98
 The judgments entered in each of the cases are reversed for error in overruling the motion for acquittal and these cases are remanded to the trial court with direction to enter judgment of acquittal as to each of the appellants.
 
 
 
 Notes:
 
 
 [1]
 Statutory references, unless otherwise indicated, are to the Internal Revenue Code of 1954, 26 U.S.C.A
 
 
 [2]
 Ruth Cook and Ann Albrecht were placed on probation for two years, the imposition of their sentences having been suspended