HILL, FARRER & BURRILL, A GENERAL PARTNERSHIP, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3942–76R.   Filed December 14, 1976.

*Carl A. Stutsman, Jr.,* for the petitioner.
*Harry Morton Asch,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Petitioner has instituted this action pursuant to section 7476[1] for a declaratory judgment that its employees' profit-sharing plan adopted on June 27, 1975, and amended effective November 7, 1975, is a qualified one under section 401(a). The parties agree that all jurisdictional requirements have been met and, pursuant to Rule 217 of the Rules of Practice and Procedure of this Court, have filed with the Court so much of the administrative record as they deem necessary for a complete disposition of the action. No evidence other than the administrative record has been presented.

The qualification of the plan depends upon whether any one of the partners in petitioner, a law firm, is an "owner-employee" within the meaning of section 401(c)(3)(B). Petitioner concedes that if this question is answered affirmatively, its plan does not meet all the applicable statutory requirements (e.g., sec. 401(a)(9), 401(a)(10)(B), and 401(d)). Respondent concedes that if none of the partners in petitioner is an "owner-employee" within the meaning of section 401(c)(3)(B), the plan is a qualified one.

Petitioner Hill, Farrer & Burrill (hereinafter referred to as the partnership or the firm) is a general partnership with 19 full partners engaged in the practice of law in Los Angeles, Calif. Its partnership agreement, executed March 3, 1957, and amended in one respect, effective January 1, 1966, provides that the capital of the partnership shall consist of a cash contribution by each partner of $12,500 or such greater or lesser amount as may be fixed by a majority of the partners from time to time. An individual cash capital account is maintained for each partner, and the interests of the partners in the capital of the partnership, whether consisting of cash or other assets, are proportionate to their respective contributions.

The profits and losses of the firm are shared pursuant to clauses V and VI of the partnership agreement, which provide in part as follows:

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

## V
## PROFITS AND LOSSES

The net profit of the partnership for each calendar year, determined as provided under Clause VI hereof, shall be distributed to each of the partners in the following ratio:

(1) Two-thirds thereof shall be divided among the partners on the basis that the total profit to the firm for services rendered by each partner during the calendar year bears to the aggregate total profit to the firm for said period for all partners, all as based upon the cost accounting records maintained by the firm; * * *

(2) The other one-third shall be allocated to the partners in proportion to their respective cash capital contributions.

* * *

Gains and losses on the sale of capital assets or income from sources other than fees for legal services rendered shall be allocated to the partners in proportion to their contribution to the cash capital.

* * *

Any losses of the partnership shall be borne by the partners in proportion to their cash capital contribution, save for losses incurred in maintaining any office other than the principal office of the firm. Such latter losses shall be deducted from total firm profits, if any, before the allocation of profit among the partners.

## VI
## DETERMINATION OF NET PROFITS

The net profits of the partnership shall be determined in conformity with present accounting practices of the firm.

Each partner is given a drawing account, and his share of the partnership profits is credited to that account. All drawings of a partner during the year are charged to his account.

The policy of the firm with respect to clients produced by a partner or associate attorney, insofar as it is here pertinent, is as follows:

In the event a partner or associate produces a client who is not then nor previously has been a client nor referred by a client of the firm, of another partner or of an associate, then the partner or associate producing such client is entitled to an allocation of 20% (less the proportionate overhead) of the fees received for the services rendered to that client and to clients referred by or through that client, whether such reference be to the firm or any partner or associate therein. If a partner or associate assigns the work of such client to any partner or associate, the one who produced the original client is entitled to credit for all subsequent referrals to the one to whom the work has been assigned, thus maintaining an unbroken chain of referrals by or through the original client.

The one entitled to any 20% allocation may assign it or any interest therein or any portion of any of his fees to others to compensate for the

otherwise uncompensated work of such others assigned to them and for expenditures in the interest of the firm, or for such other reason as to him may seem to benefit the firm.

In the event of the death, total permanent disability or permanent retirement from the practice of law of a partner or associate while a partner in or associate of this firm, the allocation of such 20% shall continue to him or to his estate or heirs, as the case may be, for a period of five years after such occurence [sic] commencing with the accounting date nearest to such occurrence.

Pursuant to these contract and policy provisions, at least one partner each year relevant hereto has actually received a distribution of partnership profits which exceeded 10 percent of the firm's total profits.

The determination of whether, under these contract and policy provisions, any one of petitioner's partners was an "owner-employee" depends upon the definition of that term in section 401(c)(3), which, insofar as it is here pertinent, is as follows:

(3) OWNER-EMPLOYEE.—The term "owner-employee" means an employee who—
* * *
(B) in the case of a partnership, is a partner who owns more than 10 percent of either the capital interest or the profits interest in such partnership.

To the extent provided in regulations prescribed by the Secretary or his delegate, such term also means an individual who has been an owner-employee within the meaning of the preceding sentence.

Respondent concedes that none of the partners in petitioner owns more than 10 percent of the "capital interest" in the firm. The issue, consequently, is narrowed to whether any one of them "owns more than 10 percent of * * * the profits interest" in the partnership. Respondent's position is succinctly stated in the final adverse determination letter issued to petitioner on April 21, 1976, as follows:

Your proposed plan for division of profits, either through the partnership agreement or in actual operation, has resulted in partners owning and receiving more than 10% of the profits interest of the partnership as a result of their productivity. Thus, it is possible for any partner to have distributed to him in any year more than 10% of the firm's profits interest. Such partner has been in the past and would be an owner-employee. Your plan does not provide the necessary provisions for owner-employees

required by Internal Revenue Code of 1954, Sections 401(a)(9), 401(a)(10)(B) and 401(d), and other applicable law.

Since, at all relevant times, at least one partner has actually received a distribution of firm profits which exceeded 10 percent of the total firm profits, respondent asks us to hold that such partner is or has been an "owner-employee" within the meaning of section 401(c)(3)(B).

Petitioner pins its case on the precise language of section 401(c)(3)(B) which refers to a partner who "owns" more than a 10-percent "interest" in a "partnership." The ownership of the profits interest in a partnership, the argument goes, is determined by the terms of the partnership agreement, and petitioner's agreement gives none of the partners a contractual right, in advance, to more than a 10-percent profits interest in the partnership. Rather, to a large extent the agreement keys the amount of the profits to which each partner is entitled each year to his productivity during the year. In such circumstances, petitioner argues, a partner may receive more than 10 percent of the profits in a given year, but this does not mean that he owns more than a 10-percent profits interest in the partnership.

While the issue is a close one, we think respondent has the better side of the argument, and we hold that petitioner's profit-sharing plan is not a qualified one under section 401(a).

The Internal Revenue Code provisions dealing with pension and profit-sharing plans provide tax benefits for both employers and employees. Generally, if a plan qualifies under those provisions, the employer may deduct his contributions to the plan in the year for which they are paid, and the employee need not include in his income the amount he receives under the plan until the year in which he receives it. *Ronald C. Packard*, 63 T.C. 621, 627 (1975). Prior to 1962, however, a partner who performed services for his partnership was not considered an employee for the purposes of those provisions, with the results that the partnership was not entitled to a deduction and the partner was currently taxable on his proportionate share of contributions made for his benefit to the partnership's profit-sharing plan. Cf. *United States v. Kintner*, 216 F.2d 418 (9th Cir. 1954).

In 1962 Congress amended section 401 to allow self-employed persons, including partners, to participate in

qualified profit-sharing plans. The technique used in the amendments was to define the term "employee" to include a self-employed individual who has earned income for the taxable year. Sec. 401(c)(1). At the same time Congress so defined the term "employer" as to treat a partnership as an employer and each partner who earned income from the partnership as an employee. Sec. 401(c)(4). Simultaneously, Congress created a category termed "owner-employee," defined in section 401(c)(3), set forth in pertinent part above, and imposed a series of additional requirements for qualification with respect to profit-sharing plans which provide contributions or benefits for employees in that category.

These additional requirements with respect to plans covering owner-employees are superimposed on the basic profit-sharing plan requirements set forth in section 401(a). In general terms if contributions to a plan are provided for an owner-employee, the trustee must be a bank or other approved person[2]; coverage must be extended to all full-time, nonseasonal employees with 3 or more years of service[3]; such employees' rights are to be nonforfeitable upon contribution to the plan[4]; a definite formula for determining employer contributions must be provided[5]; and annual contributions on behalf of an owner-employee are limited.[6] Distributions are not to be made to an owner-employee before he reaches the age of 59½ years except in case of disability,[7] and distributions to an owner-employee are to be made no later than the taxable year in which he reaches the age of 70½.[8]

In the case of a plan providing benefits for employees some or all of whom are owner-employees who control the business, restrictions are placed upon transactions between the trust and such owner-employees. These restrictions pertain to loans, compensation for personal services, preferential services, and property transactions involving the trust and an

---

[2] Sec. 401(d)(1).
[3] Sec. 401(d)(3)(A) and (B).
[4] Sec. 401(d)(2)(A).
[5] Sec. 401(d)(2)(B).
[6] Sec. 401(d)(5); sec. 404(e)(1), (e)(2)(A), and (e)(4).
[7] Sec. 72(m)(5).
[8] Sec. 401(a)(9)(A).

owner-employee or a corporation controlled by an owner-employee.[9]

In enacting these and other additional qualification requirements for plans which provide contributions on behalf of or benefits for employees some or all of whom are owner-employees, Congress anticipated that such plans would tend to be smaller than existing corporate plans and thus, without the supplementary legislation, would present "greater opportunities for abuse."[10] The additional qualification requirements were designed to prevent abuses in the management of plans covering owner-employees. The requirement that a bank or other approved person be designated as the trustee facilitates the enforcement of the restrictions on specified transactions between a trust and owner-employees. The requirement of a definite formula for contributions to the plan and the restriction on distributions to owner-employees prior to the age of 59½ are designed to discourage owner-employees with fluctuating incomes from using retirement funds as income-averaging devices prior to retirement.[11] Similarly, the requirement that distributions to an owner-employee be commenced no later than his attaining the age of 70½ helps prevent an owner-employee from using a retirement fund as a device for passing property to his estate.[12]

The definition of "owner-employee" in section 401(c)(3)(B) must be read in the light of these restrictive provisions and congressional concerns. These provisions show that Congress was concerned that a partner who was an owner-employee would dominate the employer partnership and, through it, the profit-sharing trust. Such domination of the trust could lead to the abuses for which Congress expressed its concern.

In a law firm partnership, capital usually is not a controlling consideration, and the ownership of the capital interests (substantially equal in the instant case) provides no real measure of a partner's control or domination over the

---

[9] Sec. 406, Employee Retirement Income Security Act of 1974; sec. 4975; see also former sec. 503(j), which accompanied the adoption of sec. 401(c)(3)(B).

[10] H. Rept. No. 378, 87th Cong., 1st Sess. (1961), 1962–3 C.B. 261, 262; S. Rept. No. 992, 87th Cong., 1st Sess. (1961), 1962–3 C.B. 303, 305.

[11] S. Rept. No. 992, supra, 1962–3 C.B. at 325.

[12] Grayck, "Tax Qualified Retirement Plans for Professional Practitioners: A Comparison of the Self-Employed Individuals Tax Requirement Act of 1962 and the Professional Association," 63 Colum. L.Rev. 415, 428 (1963).

partnership's management decisions. On the other hand, a partner's stake in his law firm's annual earnings, ordinarily derived mainly from services, can be a significant gauge of his influence over the firm's affairs. This is particularly true where, as in the instant case, two-thirds of the partnership's net profits are divided among the partners according to their productivity and the firm's policy, in general terms, calls for a partner to receive 20 percent (less a proportionate part of the overhead) of the fees derived from every client he has produced for the firm and from every other client referred to the firm by any client he produced. This policy allowing a partner to share in all fees paid by a client he has obtained gives him a continuing right from year to year to a portion of the firm's profits. Significantly, during the 2 years (1972 and 1974) for which petitioner's profits are shown in the trial record, the individual partners who received more than 10 percent of the firm's profits were the same in both of those years.

We are compelled to conclude that the partners who receive a distribution of petitioner's profits which exceeds 10 percent of the total firm profits are owner-employees within the meaning of section 401(c)(3)(B). While the percentage of the ownership of the profits may vary from year to year, it is agreed by the parties that "at all relevant times at least one partner actually received a distribution of firm profits" in excess of 10 percent thereof. In our opinion, that constitutes ownership of more than 10 percent of the profits interest in the partnership. In reaching this conclusion, we emphasize that there is no evidence that petitioner has abused or intends to abuse its profit-sharing plan or trust. Under the statute, however, a partner's ownership in excess of 10 percent of a profits interest in the partnership brings the restrictive provisions into play.

Petitioner's focus on the technical words of section 401(c)(3)(B) does not aid its cause. That section refers to the ownership of a "profits interest" in a partnership, and section 741 provides that gain or loss on the sale of an "interest in a partnership" shall be considered as gain or loss from the sale of a capital asset. Citing section 741, petitioner argues that partnership distributions to the several partners based on productivity do not necessarily reflect the ownership of the

profits interest. But the courts have not taken a doctrinaire approach in applying section 741. Where the consideration received by the taxpayer for the sale of a partnership interest was a "present substitute for what would have been ordinary earned income in the hands of the assigning taxpayer, if the assignment or transfer had not been made," the courts have treated the sale as an assignment of future income. *United States v. Woolsey*, 326 F.2d 287, 291 (5th Cir. 1963); *Roth v. Commissioner*, 321 F.2d 607, 610–611 (9th Cir. 1963), affg. 38 T.C. 171 (1962); *Frank A. Logan*, 51 T.C. 482, 485–486 (1968).

Consistent with the underlying principle of these cases, section 1.401–10(d), Income Tax Regs., amplifying the section 401(c)(3)(B) definition of an owner-employee, in pertinent part as follows, uses the term "profits interest" in a partnership interchangeably with a "partner's interest in the profits" of the partnership:

(d) *Definition of owner-employee.* For purposes of section 401 and the regulations thereunder, the term "owner-employee" means * * * in the case of a partnership, a partner who owns either more than 10 percent of the capital interest, or more than 10 percent of the profits interest, of the partnership. Thus, an individual who owns only 2 percent of the profits interest but 11 percent of the capital interest of a partnership is an owner-employee. A partner's interest in the profits and the capital of the partnership shall be determined by the partnership agreement. In the absence of any provision regarding the sharing of profits, the interest in profits of the partners will be determined in the same manner as their distributive shares of partnership taxable income. * * *

Thus, the measure of a partner's interest in the profits of a partnership is the amount to which he becomes entitled pursuant to the agreed formula for dividing those profits.

It is true, as petitioner argues, that the word "owns," used in section 401(c)(3)(B), often has the meaning of having good title in or holding as property. But we do not agree with petitioner that this word contemplates necessarily "a contractual agreement fixing, in advance, the percentages of the partnership profits to be awarded each partner." "Owns" is a generic term, embracing within itself varying gradations of title or other relationship to property. *Blumenfield v. United States*, 306 F.2d 892, 899, 900 (8th Cir. 1962). Its meaning in a statute is affected by the context and the legislative purpose of the provision in which it is used. *Blau v. Lamb*, 314 F.2d 618, 620 (2d Cir. 1963). Given the congressional concern for

possible abuses of the self-employment retirement provisions and the wide variety of partnership arrangements to which those provisions are applied, we think the term is broad enough to include a partner's contractual right to percentage interests measured by earnings productivity during the taxable year.

True, under most partnership agreements, the profits percentage to which each partner is entitled is known at the beginning of the year, and only the determination of the total amount of the partnership's profits must await the end of the year. Also true, petitioner's partnership agreement leaves to the end of the year the calculation of both the amount of the partnership profits and, with respect to two-thirds of those profits, the percentage to which each partner is entitled. But the formula for the calculation of each partner's profits interest is known at the beginning of the year, and he has a contractual right to the percentage produced by that formula. Any partner, at the beginning, middle, or end of the year, could sell, assign, transfer, or transmit at his death his contractual rights in the partnership profits, whatever the amount thereof might be. That constitutes ownership of an interest in those profits within the meaning of section 401(c)(3). That the calculation of each partner's profits percentage must await the results of the year's business of the partnership does not dilute his contractual right to his interest in the profits computed under the agreed formula.

Nothing in section 401(c)(3) says the percentage to which each partner is entitled must be known at the beginning of the year. Indeed, the sentence in section 401(c)(3) stating that the term "owner-employee" includes an individual who "has been" an owner-employee indicates a congressional intent that the partner's ownership rights should be measured at the end of the business year. This interpretation of that sentence is reasonable since payments under a profit-sharing plan are deductible if made on account of a taxable year and not later than the time prescribed by law (including extensions thereof) for the filing of a return for such taxable year.[13]

---

[13] Sec. 404(a)(6). It is true that the sentence in sec. 401(c)(3) referred to above contemplates that regulations will be issued defining the extent to which the term "owner-employee" means "an individual who has been an owner-employee," and no regulations have been issued interpreting this provision. While we do not rest our opinion on this ground, we think the sentence, as a minimum, reflects a congressional

We conclude that petitioner's profit-sharing plan provides contributions or benefits for employees some of whom are owner-employees within the meaning of section 401(c)(3)(B), and, therefore, the plan is not a qualified one under section 401(a).

*Decision will be entered accordingly.*

Reviewed by the Court.

TANNENWALD, *J.,* concurring: Respondent's regulations provide that "*In the absence of any provision regarding the sharing of profits,* the interest in profits of the partners will be determined in the same manner as their distributive shares of partnership taxable income." (Emphasis added.) Sec. 1.401–10(d), Income Tax Regs. I think it entirely appropriate to interpret the italicized language as meaning that the provision in the partnership agreement must be one in which the sharing of profits is specified in terms of fixed percentages or, at the very least, contains a formula which, on its face, enables the percentage share of any partner in the profits to be readily determined. Any view based upon the literal wording would permit the vaguest language in the partnership agreement to make the provision of the regulation inoperative. Certainly a provision for the division of profits as determined by two of several partners, in their discretion, should not qualify. Even under a formula such as involved herein, there is a broad area of discretionary determination as to who gets credit for business brought in or how much work a person did on a particular matter.

Nor do I see any basis for concluding that it is inappropriate to look at the facts at the end of the year because such an approach might cause a firm not to know in advance of that time whether its plan qualified. The determination of taxability based upon what happens during the taxable year, i.e., looking back at the end of the year, is not unknown to the

---

intent that the facts with respect to the profits of a partnership should be examined at the end of the year to ascertain the interests of the several partners. Since at least one of the partners under the agreed formula in the instant case became entitled to, and did, receive at all relevant times a distribution of more than 10 percent of the profits, we need not decide whether the mere possibility of this happening would have rendered one or more of the partners owner-employees.

Internal Revenue Code. One example which readily comes to mind is an election of subchapter S status which becomes invalid because, at the end of the taxable year, it appears that the corporation's receipts do not meet the necessary requirement as to the distribution among types of receipts. See *Temple N. Joyce,* 42 T.C. 628 (1964). A further example is contained in the situation where it is not known whether a corporation is a personal holding company until the amount and character of gross income for the taxable year have been determined. *Audrey Realty, Inc.,* 50 T.C. 583 (1968).

IRWIN and WILBUR, *JJ.,* agree with this concurring opinion.

GOFFE, *J.,* dissenting: I respectfully dissent. The qualification of petitioner's profit-sharing plan is predicated upon our interpretation of section 401(c)(3)(B), which defines an "owner-employee." If any partner "owns more than 10 percent of either the capital interest or the profits interest" in the partnership, such partner is an "owner-employee" and the profit-sharing plan cannot qualify under section 401(a) unless the plan fulfills the requirements of section 401(d). Although authority is delegated to the Secretary to prescribe regulations to describe the circumstances under which an individual will be deemed to be an owner-employee because he *has been* an owner-employee, the regulations promulgated under that section do not set forth any tests as to *when* an individual *has been* an owner-employee nor do the regulations explain what is meant by "owning" an interest in the capital or profits. Sec. 1.401–10(d), Income Tax Regs. The regulations do provide, however, that "a partner's interest in the profits and the capital of the partnership shall be determined by the partnership agreement." Section 1.401–10(d), Income Tax Regs., and tests are set forth for instances where the partnership agreement is silent as to the sharing of profits and the distribution of the assets of the partnership. The regulations clearly base the ownership of profits or capital upon the partnership agreement which is the proper focus. The majority looks outside the partnership agreement to see what two partners have received for 2 taxable years and concludes that because they received more than 10 percent of the net profits, they each owned more than a 10-percent

interest in the profits and were, therefore, owner-employees within the meaning of section 401(c)(3)(B). In my view the majority has backed into a definition of "owns" which is contrary to the partnership agreement as contemplated by the regulations and has adopted an interpretation which does not aim at the evil to be corrected by the owner-employee test.

It is undisputed that none of the partners owns more than a 10-percent interest in the capital of the partnership. The dispute centers around whether any partner owns more than 10 percent of the profits interest in the partnership. Such ownership must be ascertained from the partnership agreement as prescribed by the regulations. If the partnership agreement provided that Mr. X would receive 11 percent of the net profits of the partnership there would be no question that Mr. X would be an owner-employee under section 401(c)(3)(B), and the profit-sharing plan would not qualify. The partnership agreement involved here does not set forth a fixed percentage of the net profits of the partnership which each partner will receive and the agreement is not unusual or unique for a law partnership. Instead, the agreement provides that the net profits of the partnership shall first be divided into two categories of one-third and two-thirds. The one-third portion is allocated among the partners on the basis of their capital interests. Because none of the partners owns more than 10 percent of the capital interest and one-third of the net profits is divided on the percentage of the capital interest, none of the partners is an owner-employee under section 401(c)(3)(B) solely by virtue of the share he owns in the one-third portion of the net profits. The remaining two-thirds portion of the net profits is distributed to the partners in a ratio that the profit from each partner's services rendered bears to the total of the profit to the firm earned by all of the partners. The division of this two-thirds portion of the net profits is also affected by a policy of the firm which, by reference, is incorporated into the partnership agreement by the firm handbook, which the majority here also interprets. Such stated policy awards to a partner *or associate* 20 percent of the fees (less overhead) received from a new client produced by such partner or associate. This incentive, which is neither unusual nor unique in law partnerships, prevents any partner from *owning* a fixed percentage of the net profits of the

partnership for any given year because each partner's share of the profits necessarily rests upon three variables; i.e., the new clients brought to the firm by such partner, the total income earned by the partnership, and the expenses paid by the partnership for the year involved. Because of these three variables it cannot be said that any one partner in a 19-partner firm *owns* more than 10 percent of the net profits of the partnership. Until all of the fees are received at the end of the year and all expenses are paid no one can determine the percentage of the net profit each partner will receive. Contrast that with a partnership agreement which specifies the percentage of the fees to be received by each. Regardless of the total fees of the firm, the expenses of the firm, or the efforts of each partner in securing new clients for the firm, the partners will receive a fixed percentage of the net profits, regardless of the resulting amount of the net profits.

The majority equates what each partner *has received* from the firm with what the Code and regulations require; what each partner *owns* in the net income interest of the partnership. The majority accomplishes this by concluding that you must look at the facts at the end of the year because section 401(c)(3)(B) prescribes that an owner-employee means a partner who "has been" an owner-employee. I fail to see how this equates ownership in an unknown percentage of net profits to actual receipt of the net profits after all of the facts are known. The majority looks not to the partnership agreement to see how much each partner *owns*, as prescribed by the regulations, but instead looks outside the partnership agreement to the final determination of what each has received and relates the receipt back to ownership. It is true that a partner may sell his rights to the partnership profits but no partner could sell a specific percentage thereof. The majority equates 1 year's "distributive share" with "profits interests." Arguably, this is correct under the facts if a temporal approach is taken; i.e., over a period of years. However, to equate a "distributive share" of profits in any one taxable year with "profits interest" in the partnership seems unjustified because of the uncertain fluctuation and variation of such interests.

The interpretation by the majority is contrary to the identical uses of the word "owns" in the preceding portion of

the sentence which describes an owner-employee of an unincorporated business as the employee who *owns* the entire interest. Sec. 401(c)(3)(A). In the case of an unincorporated business it is possible to identify the employee who owns the entire interest and he is, therefore, identified as the owner-employee. Under the construction of section 401(c)(3)(B) made by the majority, the identity of the owner-employee cannot be made until the close of the taxable year; the identity of an owner-employee may vary from year-to-year depending upon the productivity of each partner, the amount of fees earned, and expenses paid by the firm; and in some years, there may be no owner-employee at all. Such a construction would cause a firm not to know whether its plan qualifies from year-to-year because of the variations in the efforts of the partners, the total fees earned, and the expenses paid by the firm. That is the obvious reason for not looking beyond the terms of the partnership agreement, as the regulations provide, to see if any partner *owns* more than 10 percent of the net profits of the partnership. Surely the variables of each partner's productivity, the total fees earned and expenses paid for each year, should not determine qualification of a plan on a year-to-year basis. A determination based upon the partnership agreement applies to all years and provides the certainty that is necessarily required for a viable, functioning, profit-sharing plan and in the instant case the partnership agreement specifies the method of distributing the net profit.

The regulations do not call for an examination of all the facts and circumstances to determine the respective interests in net profits but focus only on the partnership agreement or absence thereof. The majority embellishes the regulations while only recently we described as our task, "[applying] the provisions of respondent's regulations as we find them and not as we think they might or ought to have been written." *Phillip G. Larson,* 66 T.C. 159, 185 (1976). Nor do I conclude that the situation can fit within the provision of the regulations where there is an "absence of any provision regarding the sharing of profits." Sec. 1.401–10(d), Income Tax Regs. The partnership agreement specifically provides for the method of distributing profits. To require a law partnership to provide for specific percentages as an alternative to qualifica-

tion of its plan under section 401(d) by straining to apply the language of the regulations is too much.

The evils described by the majority which the owner-employee test was designed to thwart are ongoing throughout the taxable year; if the owner-employee cannot be identified until the end of the year when the accounting is completed and such owner-employee may or may not be an owner-employee in the subsequent taxable year, how can it be determined who is going to commit the abusive acts that the definition of owner-employee was designed to correct? In the preceding part of the sentence of section 401(c)(3)(B) which is 401(c)(3)(A), the identity of the owner-employee is ascertainable throughout each year and for all years not by such extrinsic facts as his efforts and the amounts of income and expense of the unincorporated business. I would not ascribe a different meaning to the word "owns" as used twice in the same sentence of section 401(c)(3). I conclude that the partnership agreement, the point of reference prescribed by the regulations, does not confer ownership to more than 10-percent interest in the profits of the partnership upon any partner within the intendment of section 401(c)(3)(B) of the Code and section 1.401–10(d), Income Tax Regs., and, therefore, none of the partners is an "owner-employee." We should, therefore, hold the plan to be qualified.

DRENNEN, STERRETT, and WILES, *JJ.*, agree with this dissent.